**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLAUDIO ALCANTARA SANCHEZ, | : | CIVIL NO. 1:24-cv-01627 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

**I.  Introduction.**

    In this social security action, Plaintiff Claudio Alcantara Sanchez

("Sanchez") seeks judicial review of the final decision of the Commissioner of

Social Security ("Commissioner") denying his claim for disability insurance

benefits under Title II of the Social Security Act.  We have jurisdiction under 42

---

    [1] Frank Bisignano is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

U.S.C. §§ 405(g).  For the reasons set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 7-1 to 7-7.*[2]  In March 2022, Sanchez protectively filed[3] an application for disability insurance benefits. *See Admin. Tr.* at 172–176.  He contends that he has been disabled since July 15, 2020. *Id.* at 172.  After the Commissioner denied his claim at the initial level and at the reconsideration level of administrative review, Sanchez requested an administrative hearing. *Id.* at 84–89, 91–94, 95–96.  On September 25, 2023, Sanchez—who was represented by counsel and benefited from an interpreter—as well as a vocational expert testified at a telephonic hearing before Administrate Law Judge Scott Staller (the "ALJ"). *Id.* at 20, 39–60.  On November 22, 2023, the ALJ denied Sanchez's claim for benefits. *Id.* at 20–34. Sanchez appealed the ALJ's decision to the Appeals council, which denied his

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Sanchez's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

2

request for review. *Id.* at 1–5.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In September 2024, Sanchez, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying his claim. *See doc. 1.*  He requests that the court "revers[e] the decision of the Appeals Council[.]" *Id.* ¶ 24 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 5.*  The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 6, 7.*  The parties filed briefs (*see docs. 10, 12*), and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "[T]he threshold for such evidentiary

3

sufficiency is not high." *Biestek*, 587 U.S. at 103.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Sanchez is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Sanchez met the insured-status requirements through December 31, 2026. *Admin. Tr.* at 19, 20.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d

Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On November 22, 2023, the ALJ denied Sanchez's claim for benefits. *Admin. Tr.* at 20–34.  He proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Sanchez had not engaged in substantial gainful activity since July 15, 2020, the alleged onset date. *Id.* at 22.

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Sanchez had the following severe impairments: "degenerative disc disease of the thoracic spine, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, mild spurring of the left knee patella, left foot impairment (hypertrophic changes of the first MTP joint, posterior calcaneal enthesopathy, a heel spur, and ossification of the posterior plantar aponeurosis), and obesity."[5] *Id.* The ALJ also found that Sanchez's hypertension and depression were not severe impairments. *Id.* at 23–24.  In concluding that these impairments were not severe, the ALJ cited the fact that Sanchez "did not allege experiencing symptoms or limitations related to" his hypertension or depression "during his testimony." *Id.* at 23.

---

[5] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

### C.  Step Three.

At step three of the sequential-evaluation process, the ALJ found that Sanchez did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 25–27.  Specifically, the ALJ considered Listings 1.15 and 1.16 based on Sanchez's degenerative disc disease of the lumbar spine, and Listing 1.18 based on Sanchez's left knee and left foot impairments. *Id.*  The ALJ also considered Sanchez's obesity in determining whether his "impairments meet or equal any listing" as required by the regulations. *Id.* at 27 (citing SSR 19-2p).  Ultimately, the ALJ concluded that Sanchez's "obesity impairment in combination with [his] other medically determinable impairments does not meet or medically equal any listing." *Id.*

### D.  The RFC.

The ALJ then determined that Sanchez had the RFC to perform light work with the following limitations: (1) he "can stand and/or walk 4 hours in an 8 hour workday"; (2) "[h]e can frequently climb ramps or stairs, but only occasionally climb ladders, ropes or scaffolds"; (3) he "can frequently balance, stoop, kneel, crouch or crawl"; (4) "[h]e can tolerate frequent exposure to unprotected heights"; and (5) "he can frequently operate hazardous machinery." *Admin. Tr.* at 27–28.

In making this RFC assessment, the ALJ noted Sanchez's testimony at the hearing regarding his conditions and limitations. *Id.* at 28–29. The ALJ found that Sanchez's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" *Id.* at 29. But the ALJ also found that Sanchez's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* To explain this conclusion, the ALJ noted multiple medical appointments during the time of alleged disability in which Sanchez had normal range of motion, 5/5 strength, lack of distress, lack of pain, and the ability to "ambulate with a normal gait[.]" *Id.* at 29–30. The ALJ also noted the treatment Sanchez received in connection to his severe physical impairments. *Id.* at 30.

In addition, the ALJ considered 3 medical opinions. He considered—and found persuasive—the opinion of a state agency medical consultant. *Id.* at 30–31. He also considered the opinion of James Goodyear, M.D. ("Dr. Goodyear"). *Id.* at 31–32. The ALJ found Dr. Goodyear's opinion to be partially persuasive because, although it was generally supported, it was not consistent with all of Sanchez's medical records. *Id.* Finally, the ALJ found the opinion of a state agency psychological consultant to be persuasive. *Id.* at 32.

Ultimately, the ALJ decided to "accommodate[] some degree of [Sanchez's] symptoms related to [his] severe impairments in his [RFC] by limiting [Sanchez]

to a range of work at the light exertional level that includes postural and environmental limitations." *Id.*

### E. Step Four.

At step four of the sequential-evaluation process, the ALJ found that Sanchez was able to do his past relevant work as a warehouse worker "as actually performed at the light exertional level, unskilled[.]" *Id.* at 32.  The ALJ concluded that Sanchez "performed the job of warehouse worker for a sufficient period of time to learn the essential job tasks and at the substantial gainful activity level within the past fifteen years." *Id.*  The ALJ then compared the RFC with "the physical and mental demands of this work," and found that Sanchez is "able to perform the job of warehouse worker as it was actually performed by [Sanchez]." *Id.*  The ALJ cited the testimony of the vocational expert in support of this conclusion. *Id.*

### F. Step Five.

The ALJ also addressed step five in the alternative to his conclusion at step four. *Id.* at 33–34.  The ALJ considered Sanchez's age, education, work experience, and RFC, as well as the testimony of the vocational expert, and found that there were jobs—such as electrode cleaner, information clerk, and package

labeler—that exist in significant numbers in the national economy that Sanchez could perform. *Id.* at 33–34.

***

In sum, the ALJ concluded that Sanchez "has not been under a disability, as defined in the Social Security Act, from July 15, 2020, through" November 22, 2023, the date of the decision. *Id.* at 34. Thus, he denied Sanchez's claim for benefits. *Id.*

## V. Discussion.

Sanchez raises certain arguments only in passing, and without citations to the record or caselaw. *See doc. 10* at 9–11. We will neither develop legal arguments on a party's behalf based on passing mention of error nor will we dig through the voluminous record in search of support for such arguments. *See Loewen v. Berryhill*, 707 Fed. Appx. 907, 908 (9th Cir. 2017) (memorandum opinion) (citing *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("We do not address this finding because [the claimant] failed to argue this issue with any specificity in his briefing.")); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("When reading [the appellant's] brief, one wonders if [it], in its own version of the 'spaghetti

approach,' has heaved the entire contents of a pot against the wall in hopes that something would stick. We decline, however, to sort through the noodles in search of [the appellant's] claim. . . . we cannot 'manufacture arguments for an appellant'") (quoting *Greenwood v. Fed. Avaiation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)); *see also U.S. v. Dunkel*, 927 F.2d 944 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *see also U.S. v. Winkelman*, 548 F. Supp. 2d 142, 150 (M.D. Pa. Mar. 10, 2008) ("We are not pigs searching for truffles and are unwilling to search through the massive record that has been developed in this case to find evidence of these alleged violations."). We thus discuss the undeveloped arguments no further.

Insofar as Sanchez does develop arguments, he raises the following on appeal. *See generally doc. 10*. Sanchez argues that the ALJ erred by failing to find some of his impairments to be severe and then failing to properly consider the limitations from those impairments when crafting the RFC. *See doc. 10* at 17. Sanchez also argues that the ALJ failed to properly consider Sanchez's limitations from his "identified severe impairments." *Id.* at 12. Sanchez explains that, in his opinion, the ALJ failed to properly consider Sanchez's testimony and the medical opinion evidence. *Id.* at 14–16, 20–24.

In his brief, the Commissioner argues that "the ALJ thoroughly reviewed the evidence and assessed that [Sanchez] retained the RFC" outlined above. *Doc. 12* at

14.  The Commissioner further explains that the ALJ cited to [Sanchez's] physical examinations consistently" and "also discussed that [Sanchez's] treatment was conservative, which further supported the ALJ's fact-finding." *Id.* at 16 (internal citation omitted).  In sum, according to the Commissioner, the ALJ's findings are supported by substantial evidence. *See generally id.*

### A.  The ALJ did not err in regard to his treatment of Sanchez's non-severe impairments.

At step two, the ALJ found that Sanchez had both severe and non-severe impairments. *Admin. Tr.* at 22–24.  Specifically, the ALJ found that Sanchez's hypertension and mental impairment were non-severe. *Id.* at 23–24.  Sanchez does not clearly argue which of his diagnoses or disorders should have been considered severe. *See doc. 10* at 17.  Instead, Sanchez argues that the ALJ did not properly account in the RFC for his limitations as they relate to his "bilateral upper extremities (including arm cramping and difficulty reaching), cramping in his hands, and headaches." *Id.* at 18.   The Commissioner counterargues that "pain is a symptom of an impairment, not an impairment itself." *Doc. 12* at 19 (citing *Brinegar v. Berryhill*, NO. 3:16-CV-1872, 2017 WL 1709416, at *9 (M.D. Pa. May 3, 2017).  Faced with an argument that *something* should have been found to be severe without clear argument as to *what* impairment is severe, and noting that where an ALJ finds in the applicant's favor at step two by finding some other

14

severe medical condition, "even if he had erroneously concluded that some of [the claimant's] impairments were non-severe, any error was harmless[,]" *Salles v. Commissioner of Social Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007), we address alleged error at step two no further.

As to Sanchez's arguments that the ALJ did not properly account for his "bilateral upper extremities (including arm cramping and difficulty reaching), cramping in his hands, and headaches" (*doc. 10* at 18), the Commissioner argues that the ALJ crafted a "generous RFC" which "fully encompassed all of [Sanchez's] credibly-established functional limitations, including those arising from his alleged pain" (*doc. 12* at 21–22).

The ALJ did discuss Sanchez's hand cramping, arm pain, and headaches when crafting the RFC. *See Admin. Tr.* at 28.  The ALJ ultimately found, however, that Sanchez "does not experience limitations related to his severe physical impairments to the extent alleged by the claimant." *Id.* at 30.  Although Sanchez argues that the ALJ did not consider the Medical Consultative Exam Physician report, Sanchez's testimony, the medical record, and the "forms" Sanchez completed (*doc. 10* at 16), the ALJ cites to Sanchez's testimony, various portions of the medical record, Sanchez's Function Reports, and the opinion of Dr. Goodyear, the physician who examined Sanchez (*see Admin. Tr.* at 27–32).  We, therefore, find that the ALJ did not err by failing to properly account for Sanchez's

impairments as they relate to his bilateral upper extremities, hand cramping, and headaches.

### B.  The ALJ did not err in his consideration of the opinion evidence.

On March 27, 2017, the regulations regarding opinion evidence shifted. *See Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279 (M.D. Pa. 2022).  Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id.* at 280.  But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id.*  Further, under the old regulations, the ALJ assigned the weight he or she gave to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.967(c).  Under the new regulations, however, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using certain factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Those factors are: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. *Id.*  The most important factors are supportability and consistency. 20 C.F.R. § 416.920c(a).  As such, the ALJ must specifically explain how he or she "considered the supportability and consistency

16

factors for a medical source's medical opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. § 416.920c(b)(2).  The ALJ may, but is not required to, explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. *Id.*

At times, Sanchez appears unaware of the "new" regulations, despite their now being over eight years old: (1) he argues that Dr. Goodyear's medical opinion "should have been afforded more weight in terms of setting forth [Sanchez's] RFC" (*doc. 10* at 19); (2) he sets out the old regulations (*see id.* at 20–23); and (3) he  argues that the ALJ erred "in only assigning weight to the opinions of the single decision making in this case, the State Agency Medical Consultant" (*id.* at 23–24).  For his part, the Commissioner first points out that Dr. Goodyear did not treat Sanchez, and, therefore, argument that his opinion should be afforded additional weight on the basis of the "treating source rule," was misplaced. *Doc. 12* at 24.  Nevertheless, the Commissioner argues, the new regulations "no longer make medical opinions from treating sources eligible for controlling weight." *Id.* The Commissioner argues that the ALJ was faced with contradictions in the medical record and properly exercised his "substantial discretion" in addressing those contradictions. *Id.* at 24–26.  Further, according to the Commissioner, the ALJ "sufficiently explained his reasons for" accepting the prior administrative medical findings. *Id.* at 27.

The ALJ applies the proper regulations.  He analyzed Dr. Goodyear's opinion by evaluating its supportability and consistency. *See Admin. Tr.* at 31–32. He found that Dr. Goodyear's opinion was supported by the medical record. *Id.* But he also found that Dr. Goodyear's opinion was "not consistent with all of [Sanchez's] medical records pertaining to this matter, including abnormal diagnostic testing findings pertaining to [Sanchez's] lumbar spine, cervical spine, and thoracic spine." *Id.* at 32.  The ALJ thus concluded that Dr. Goodyear's opinion was partially persuasive; specifically, he found that Dr. Goodyear's opinion was persuasive "to the extent it indicates [Sanchez] is capable of performing a range of work at the light exertional level." *Id.* at 32.  The ALJ conducted the same analysis as to the state agency medical consultant and the state agency psychological consultant (whose opinions he found to be persuasive). *Id.* at 32.  Further, the ALJ "provided a somewhat more restrictive [RFC] than is indicated by the State agency [medical] consultant's opinion." *Id.* at 31.  The ALJ thus considered the opinion evidence as required by the new regulations and explained his process in doing so.  We, therefore, conclude that the ALJ did not err as to his evaluation of the opinion evidence.

**C.  The ALJ did not err in his consideration of Sanchez's self-reported symptoms.**

Sanchez argues that the ALJ did not consider his testimony in crafting the RFC. *Doc. 10* at 16.  According to Sanchez, his "testimony was consistent with issues and limitations [he] noted . . . when he completed Function Report forms during the initial claim and reconsideration levels, which was also confirmed by complaints of pain and other limitations upon treatment." *Id.* at 14.  The Commissioner argues that "[t]he ALJ is given great discretion in evaluating subjective complaints and his findings are entitled to great deference." *Id.* at 17.  In sum, per the Commissioner, "[t]he ALJ has fulfilled his duty here, and his findings are supported by substantial evidence." *Id.*

The ALJ addressed Sanchez's self-reported symptoms as presented in the Function Report and Hearing Testimony. *Admin. Tr.* at 28–29.  He cited both pieces of evidence multiple times. *See id.*  The ALJ found that "[Sanchez's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record[,]" because the medical records include multiple reports that "[Sanchez] was . . . in no acute distress" and had "normal range of motion of the thoracic back and no focal neurological deficits." *Id.* at 29.

Clearly Sanchez wishes that the ALJ had crafted an RFC that accounted for each of Sanchez's self-reported symptoms.  But the ALJ was not required to do

so—he was required to consider these symptoms, which he did. *Id.* at 28–29. Upon consideration of Sanchez's alleged symptoms, the ALJ found that the self-reported symptoms are not entirely consistent with the medical evidence. *See id.* at 29. The ALJ then crafted the RFC in light of the medical evidence. *See id.* at 27–32. At this stage of review, "we must not substitute our own judgment" or that of the plaintiff "for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014). The ALJ explained his reasoning in finding that Sanchez's self-reported symptoms were not entirely consistent with the record and, therefore, why he would not rely on such symptoms as indicative of the necessary limitations. In doing so, he satisfied his obligation to provide "a clear and satisfactory explication of the basis on which" his decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Accordingly, we conclude that substantial evidence supports the ALJ's RFC.

## VI. Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge